UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                     :
UNITED STATES OF AMERICA             :
                                     :    Crim. No. 09-402 (NLH)
      v.                             :
                                     :
TYRONE DENNISON,                     :    **Opinion**
                                     :
            Defendant                :
_____:


**APPEARANCES**:

LISA EVANS LEWIS
OFFICE OF THE FEDERAL PUBLIC DEFENDER
800-840 COOPER STREET
CAMDEN, NJ 08053

      *Counsel for Defendant*

DANIEL FRIEDMAN
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

      *Counsel for the United States*


**Hillman**, **District Judge**

      Before the Court is Tyrone Dennison's ("Defendant") Motion

for Reduction of Sentence under the First Step Act 18 U.S.C. §

3582(c)(1)(A).  [Dkt. No. 23].  Defendant also filed a *pro* se

letter in April 2019 requesting both an update to his § 2255

motion and a court order updating his release time in accordance

with the First Step Act.  [Dkt. No. 19].  On December 14, 2020,

Defendant also filed a Supplemental Motion requesting that the

1

Court allow him to serve the remainder of his time on home

confinement.  [Dkt. No. 27].  The Court held a hearing on

Defendant's Motion for Reduction of Sentence and Supplemental

Request for Home Confinement [Dkt. Nos. 23, 27] on May 5, 2021.

At that hearing, the Court requested that the parties provide

additional briefing regarding other cases in which Defendants

were released from prison after receiving the COVID-19 vaccine,

and more information on the lasting effects of the coronavirus

after having recovered from an initial infection.  For the

reasons expressed below, Defendant's Motions will be denied, and

his letter request will be dismissed as moot.

**Background**

Defendant Dennison plead guilty, pursuant to a plea

agreement, to Conspiracy to Commit Robbery and Use of a Firearm

During and in Relation to a Crime of Violence on June 1, 2009.

Defendant and two co-conspirators traveled from Philadelphia to

a Sports Authority distribution facility in Burlington County,

New Jersey to commit a robbery.  One of Dennison's co-

conspirators forced a security guard, at gun point, to an empty

trailer where the guard was bound and ordered to lay face down.

[Dkt. No. 10].  As his co-conspirators removed three loaded

trailers of merchandise from the facility, Dennison stood watch

over the guard and stole the guard's wallet, cell phone, and

keys.  *Id.*  Dennison was a career offender with a prior

2

conviction under 18 U.S.C. § 924(c) for using a firearm during a drug trafficking crime, thus making his Guidelines range of imprisonment 451 to 488 months.  On August 9, 2010, the late Honorable Judge Joseph E. Irenas sentenced Dennison to consecutive terms of imprisonment of 96 months on Count One and 100 months on Count Two, a significant departure below the Guidelines range due to Dennison's substantial assistance to law enforcement.  [Dkt. No. 16].

Dennison's estimated release date from FCI Phoenix (Arizona) is January 10, 2023, assuming he earns all possible good time credit.  Using this date, he has served approximately 85% of his sentence.  Not counting good time credit, he will complete his entire term on or about June 7, 2025 and has served approximately 73% of his total sentence.  On March 25, 2019, Dennison filed a *pro* se letter request to the Clerk of Court. [Dkt. No. 19].  Docketed as a motion,[1] this letter sought an "Order from this Honorable Court that the Bureau of Prisons ("BOP") update my new release time according to the First Step Act."  [Dkt. No. 19].  The Government did not respond to this letter.

---

[1] This letter also sought an update on Defendant's § 2255 Motion, docketed at 16-cv-3647 and filed June 20, 2016.  That matter was stayed and subsequently dismissed voluntarily in June 2021. [*See* Case No. 1:16-cv-03647, Dkt. Nos. 17, 18].

On November 25, 2020, Dennison brought his first counseled Motion for Reduction of Sentence Under the First Step Act. [Dkt. No. 23].  He followed up on this motion on December 14, 2020, with a *pro se* Supplemental Motion requesting that the Court allow him to serve the remainder of his sentence on home confinement.  [Dkt. No. 27].  He appears now before the Court upon the counseled Motion for Reduction of Sentence Under the First Step Act filed on his behalf on November 25, 2020, and his subsequent supplemental motion request for home confinement. [Dkt. Nos. 23, 27].  The Court will also address Defendant's pending 2019 letter request.  [Dkt. No. 19].  As to Defendant's Motion for Reduction of Sentence, the Government filed in opposition on December 23, 2020 and April 15, 2021.  [Dkt. Nos. 28, 29].

After the hearing on May 5, 2021, Dennison filed a supplemental brief on May 10, 2021 [Dkt. No. 31] and the Government provided a supplemental brief in opposition on May 17, 2021.  [Dkt. No. 33].  Defendant filed a *pro se* letter on July 27, 2021, updating the Court on his status.  [Dkt. No. 35].

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. §

3582(C)(1)(A)(i)).  Before bringing a motion for reduced

sentence on their own behalf, defendants first must ask the

Bureau of Prisons ("BOP") to do so on their behalf, give BOP

thirty days to respond, and exhaust any available administrative

appeals. *United States v. Raia*, 953 F.3d 594 (3d Cir. 2020)

(citing § 3582(c)(1)(A)).  "Thus, under the First Step Act, a

defendant seeking a reduction in his term of imprisonment bears

the burden of satisfying both that he has (1) exhausted remedies

before seeking judicial review, and (2) that compelling and

extraordinary reasons exist to justify compassionate release."

*Sellers*, 2020 WL 1972862 at *1 (citing 18 U.S.C. §

3582(C)(1)(A)).

At this second step, a court may reduce an inmate's

sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court

finds that (1) extraordinary and compelling reasons warrant a

reduction, (2) the reduction would be consistent with applicable

policy statements issued by the Sentencing Commission, and (3)

the applicable sentencing factors under § 3553(a) warrant a

reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL

2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in

this case after applying to the warden of FCI Phoenix on July

31, 2020.  The warden denied his request on August 19, 2020, and

more than thirty days have since passed.  The Government agrees

that Defendant has exhausted his administrative remedies, as

required by the statute.

2. **Defendant fails to establish "extraordinary and compelling"**

**reasons for his release**

Defendant argues that his pre-existing medical conditions

place him at a high risk for complications from COVID-19.

Specifically, Defendant advises that he suffers from obesity,

diabetes, hypertension, and hyperlipidemia.  [Dkt. No. 23 at 2].

At the time of his filing in November 2020, Defendant was 53

years old and had a body mass index (BMI) of 41.3, which exceeds

the CDC guidelines for determining obesity.  *Id.* at 5.  His BMI

in May 2021 was 39, a modest improvement.  [Dkt. No. 31 at 4.

He is seen regularly by the chronic care team of FCI Phoenix,

and, according to the Government, "concedes that his care is

good."  [Dkt. No. 28 at 7].

Dennison was tested for COVID-19 on December 9, 2020, and a

positive test result was returned on December 14, 2020. *Id.* at

5.  In the aftermath of his positive infection, Dennison was

monitored, treated, and fully recovered from an asymptomatic

case of COVID-19.  Additionally, Dennison is fully vaccinated

against COVID-19 after receiving two doses of the Moderna

vaccine in April 2021.  [Dkt. No. 33 at 1].

In his supplemental filing, Dennison argues that the ongoing COVID-19 pandemic, his pre-existing medical conditions, the conditions of his confinement, and his rehabilitation efforts altogether constitute extraordinary and compelling reasons sufficient to reduce his prison sentence.  [Dkt. No. 27].  He also argues that the risk of reinfection remains despite his vaccination.  *Id.*  Defendant also cites cases in other districts where compassionate release has been granted to defendants who have received both doses of the vaccine and have recovered from COVID-19.

The Government disagrees that Defendant presents "extraordinary and compelling" reasons for his release.  The Government argues that because Defendant received both doses of the Moderna vaccine, he does not present any "extraordinary and compelling" reasons for release.  [Dkt. No. 28 at 4].  Being vaccinated, the Government argues, denotes Defendant's ability to provide effective "self-care" against the virus.  As explained more fully below, under the all the circumstances presented here, compassionate release is unwarranted.

Additionally, FCI Phoenix's mitigation efforts at controlling the spread of the coronavirus appear to be effective.  Currently, FCI Phoenix has zero active inmate cases

and 4 active staff cases.[2]  Over the course of the pandemic, two

inmates have died due to the coronavirus, and over 400 inmates

have recovered from positive infections.  *Id.*

 Regarding Defendant's vaccination status, the Court takes

caution to neither punish nor incentivize this Defendant or

others with respect to their acceptance or refusal to receive

the COVID-19 vaccine and will view this issue in the context of

the entirety of Defendant's application.  While the Court is

encouraged by Defendant's vaccination status in light of well-

established and accepted evidence that the available vaccines

are both safe and effective, undue weight will not be given,

positively or negatively, to his decision standing alone.  There

may be, in some limited circumstances not present here, valid

reasons to decline a vaccine and a prisoner whose compassionate

release is otherwise justified should be denied such relief just

because they are vaccinated.

 After a review of the record as a whole, the Court finds

that Defendant, at 54 years old and fully vaccinated, does not

present "extraordinary and compelling" reasons supporting his

release.  His previous recovery from the virus, his current

vaccinated status, the effective management of his health

---

[2] *See* Federal Bureau of Prisons COVID-19 Coronavirus COVID-19
Cases available at https://www.bop.gov/coronavirus/ (last
visited November 16, 2021).

conditions by BOP medical personnel, and FCI Phoenix's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this Defendant presents extraordinary and compelling reasons for his release.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could establish extraordinary and compelling circumstances for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.[3]  Here, they do not.

Defendant claims that he satisfies several of the § 3553(a) factors and that he has taken steps to turn his life around. Despite his significant criminal record, he assisted the government in their investigation and prosecution of others involved in the instant case.  For this he earned a significant downward departure from the aforementioned sentencing judge. While the Court notes Dennison's completion of significant education and skills courses while incarcerated, this does not negate the seriousness of his crime and his extensive criminal record.

The Court agrees with the Government's position that the § 3553(a) factors weigh against the Defendant's release.  Despite

---

[3] The Court need not consider U.S.S.G. § 1B1.13 (policy statement) as the Defendant fails to provide extraordinary and compelling reasons for his release and fails to demonstrate that the § 3553(a) factors favor release.

Defendant's assistance to the Government in this case, his incarceration is based upon his participation with others in a violent, armed robbery of goods valued at approximately $500,000.  The Defendant's initial guidelines, from which he received an extremely large downward departure, highlight just how serious Defendant's conduct was.  18 U.S.C. §§ 3553(a)(4).  Dennison's criminal record is extensive, and this case was his third adult felony conviction involving the use or unlawful possession of a firearm.  18 U.S.C. § 3553(a)(1).

While Defendant's age may suggest that he is unlikely to recidivate, the Government raises a valid argument that Defendant was 41 years old at the time he committed this crime — "not a young man."  [Dkt. No. 28 at 8].  This suggests a risk of recidivism warranting continued incarceration, 18 U.S.C. §§ 3553(a)(2)(C).  Moreover, any further reduction in Defendant's sentence may present an unwarranted sentencing disparity, 18 U.S.C. §§ 3553(a)(6), and fail to deter others considering the commission of similar crimes.  18 U.S.C. §§ 3553(a)(2)(B).

In sum, given the serious nature of the underlying offense, the Defendant's extensive criminal history, the need for specific deterrence, and despite strides in the right direction, the 3553(a) factors do not warrant release on the record as a whole.

## 4. **Defendant's remaining motions**

Dennison's *pro* se supplemental motion filed on December 14,
2020, requests that the Court allow him to serve his final
months of incarceration while on home confinement.  [Dkt. No.
27].  That motion will be denied as this Court does not have the
authority to grant Defendant's request for home confinement as
the Bureau of Prisons ("BOP") is solely responsible for
determining an inmate's place of incarceration.  *See* 18 U.S.C. §
3621(b)(5); *Moore v. United States Att'y Gen.*, 473 F. 2d 1375,
1376 (5th Cir. 1973) (per curiam).  Accordingly, the Court will
deny Defendant's request for home confinement.

To the extent Defendant's motion for home confinement is
part and parcel of his compassionate release motion, it would
also be denied.  The Court recognizes that Defendant suffers
from various ailments such as an enlarged prostate, diabetes,
and sleep apnea, but as set forth above, his overall health
condition does not rise to the level of being extraordinary and
compelling.  The Government argues that Defendant's motion
should be denied as he has not presented a detailed release
plan, and this Court agrees.  [Dkt. No. 33 at 11].  In his
initial motion, Defendant advises that, were he to be released,
he would live with an aunt in Philadelphia.  [Dkt. No. 23 at
12].  In his supplemental motion, Defendant advises he will live
with the grandmother of his children.  [Dkt. No. 27].

Considering Defendant's lack of details regarding a potential release plan and this internal inconsistency, home confinement is inappropriate on this record even if this Court were authorized to grant such relief or if it granted Defendant's compassionate release motion and added home confinement as a special condition of his supervised release.

Regarding Defendant's letter filed on March 25, 2019, as best the Court can ascertain, Defendant's requests are moot. [Dkt. No. 19]. His § 2255 Motion [Case No. 16-cv-3647] has been voluntarily dismissed by Defendant, and this Opinion and accompanying Order address Defendant's remaining request regarding his release time in accordance with the First Step Act.

## Conclusion

For the reasons contained herein, Defendant's counseled Motion for Reduction of Sentence Under the First Step Act [Dkt. No. 23] and Supplemental Motion Request for home confinement [Dkt. No. 27] will be denied. Defendant's letter request [Dkt. No. 19] will accordingly be dismissed as moot.

An accompanying Order shall issue.


Dated: 12/1/2021                    /s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.


12